IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHNNIE JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 06 CV 5086 |
| v. | ) | |
| | ) | Wayne R. Andersen |
| JOLIET JUNIOR COLLEGE, and | ) | District Judge |
| EDWARD SENU-OKE | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| DERRICK A. COLEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 06 C 2135 |
| v. | ) | |
| | ) | Wayne R. Andersen |
| JOLIET JUNIOR COLLEGE, and | ) | District Judge |
| EDWARD SENU-OKE | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Johnnie Johnson ("Johnson") and Derrick Coleman ("Coleman") each filed a separate action against the defendants, Joliet Junior College ("JJC") and Edward Senu-Oke ("Senu-Oke"), alleging racial discrimination, national origin discrimination, hostile work environment and retaliation under Title VII, as amended by the Civil Rights Act of 1991, and Section 1981 of the Civil Rights Act of 1866. This case is before the court on the defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, this motion is granted in part and denied in part. We grant the defendants' motion to dismiss the national origin discrimination claims against JJC and Senu-Oke in Counts

I and IV, as well as the claims against JJC in Counts IV and V. The motion is denied with respect to Counts II and III, as well as Count I, to the extent it alleges racial discrimination in violation of Title VII, Count IV, to the extent it alleges racial discrimination and hostile work environment against Senu-Oke in violation of § 1981, and Count V, to the extent it alleges retaliation against Senu-Oke.

## BACKGROUND

Johnson, an African-American, began her career at JJC in 1987 as an administrator. In 1990, she was hired as an adjunct (part-time) professor, and in 2002, and she became a full-time, tenured-track professor. Also in 2002, JJC hired Coleman, an African-American, as an adjunct professor.

Defendant, Senu-Oke is Afrikaan; specifically, he is a Nigerian citizen with residency in the United States. Senu-Oke was hired by JJC in 1991 as a professor at the college, and in 2002, Senu-Oke became the department chair. As department chair, Senu-Oke was the plaintiffs' immediate supervisor. Prior to obtaining his supervisory position, Johnson admits that she and the defendant enjoyed a cordial working relationship. However, after Senu-Oke's appointment to department chair, both plaintiffs allege that Senu-Oke engaged in discriminatory, hostile, and retaliatory behavior. In Johnson's case, Senu-Oke's behavior included the following: repeated use of the word "negroes" in derogatory sentences, threats of violence for failure to comply with his requests, threats of arrest, refusal to assign overload classes, and condescending language that humiliated the plaintiff in front of her colleagues. In Coleman's case, Senu-Oke's behavior included: the repeated use of the phrase "ya negroes," threats of termination for failure to change the grades of two white students, threats of violence, false allegations of misconduct, refusal to assign classes to him, and insulting comments.

Based on the series of facts alleged above, Johnson and Coleman filed separate claims against the defendants on August 22, 2006 and April 18, 2006 respectively. However, due to the similarity of facts and claims under each complaint, and pursuant to the plaintiffs' request, these cases were consolidated on December 4, 2006. Both plaintiffs allege the following: 1) Count I alleges racial and national origin discrimination against JJC in violation of Title VII, 2) Count II alleges hostile work environment against JJC in violation of Title VII, 3) Count III alleges retaliation against JJC in violation of Title VII, 4) Count IV alleges racial discrimination, national origin discrimination, and hostile work environment against JJC and Senu-Oke in violation of § 1981, and 5) Count V alleges retaliation against JCC and Senu-Oke in violation of § 1981. The defendants now move for summary judgment on all counts.

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 277, 248 (1986). Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The existence of a factual dispute is not sufficient to defeat a summary judgment motion; instead, the nonmoving party must present definite, competent evidence to rebut the motion for summary judgment. *See Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). In reaching its holding, the court will

consider the evidence in a light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *See Anderson*, 477 U.S. at 255.

We note that the Seventh Circuit has determined that courts should hesitate before granting summary judgment in employment discrimination cases because intent and credibility are critical. *See Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993) (stating that the summary judgment standard is applied "with added rigor in employment discrimination cases, where intent and credibility are crucial issues"). However, summary judgment is still appropriate in cases when no genuine issue of material fact is disputed. *Senner v. Northcentral Technical College*, 113 F.3d 750, 757 (7th Cir. 1997); *Giannopoulos v. Branch & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997); *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

## DISCUSSION

### I. Summary Judgment is Granted with Respect to National Origin Discrimination Allegations in Counts I and IV.

Counts I and IV set forth claims that the plaintiffs were discriminated against based on their race and national origin. To the extent these claims allege racial discrimination, the defendants' motion for summary judgment is denied. However, the plaintiffs' claim for national origin discrimination is without merit because the facts do not suggest that the defendants discriminated against the plaintiffs' national origin: the United States. *See Baker v. Indiana Family & Soc. Serv. Admin.*, 260 F. Supp. 2d 731 (S.D. Ind. 2003). The alleged facts include complaints about the use of the word "negroes," differential treatment between African-American and white professors, and discriminatory and retaliatory action based on their race. Noticeably absent from the alleged facts are discriminatory practices against the plaintiffs

because they are American. Accordingly, the plaintiffs' national origin claims cannot succeed. *See id.*

Furthermore, Coleman has no standing to bring a claim of national origin discrimination because he failed to check the "national origin" box on his EEOC complaint, and therefore, he did not exhaust all administrative remedies at the EEOC. *See id.* at 735-36. His failure to properly file a complaint with the EEOC rendered him unable to put the defendants on notice as to the claims asserted. *See id.* at 735. Although the plaintiff argues that his national origin claim was timely, or in the alternative, that his claim relates back, such arguments cannot allow the plaintiff to evade summary judgment because the plaintiff has offered no facts that suggest the defendants discriminated against him because he is American. To the extent that the Seventh Circuit held otherwise in *Abdullahi v. Prada U.S.A. Corp.*, 520 F.3d 710 (7th Cir. 2008), this case is distinguishable. Specifically, while the court in *Abdullahi* inferred racial discrimination from national origin discrimination, the plaintiff here requests that the court infer national origin discrimination from racial discrimination. The court cannot make such an inference because although the word "negroes" and other racially motivated conduct can give rise to a claim of racial discrimination, this conduct does not suggest that the defendants discriminated against the plaintiff because he is American. Thus, while *Abdullahi* demonstrates that a claim of national origin discrimination may also substantiate a claim for racial discrimination, the reverse is not true. *See id.* at 735-36.

Accordingly, defendants' motion for summary judgment is granted with respect to Counts I and IV, to the extent that they allege national origin discrimination.

**II.      Summary Judgment is Granted with Respect to Plaintiffs' § 1981 Claims Against JJC.**

Counts IV and V set forth allegations of racial discrimination, national origin discrimination, hostile work environment, and retaliation against JJC and Senu-Oke in violation of § 1981.  To succeed on the § 1981 claim against JJC, a public entity, the plaintiffs must demonstrate that JJC promulgated an official policy or custom of discrimination.  *Smith v. Chicago School Reform Bd. of Trustees*, 165 F.3d 1142 (7th Cir. 1999); *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 736-37 (1989) (stating that "recovery against a governmental body under § 1981 may not be based on respondeat superior").  To prove the existence of a discriminatory policy or customs, the plaintiffs must show that 1) JJC had an express policy that caused a constitutional deprivation, 2) JJC has an unexpressed, widespread practice of discrimination that is so permanent and well-settled that it constitutes a custom or usage, or 3) the plaintiffs' constitutional injury was caused by a person with final policy-making authority.  *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658, 690-91 (1978).

The plaintiffs argue that JJC had an official, unexpressed policy or custom of discrimination because Senu-Oke admitted that he has the power to make policy, and because other individuals filed similar complaints with the EEOC against the defendants.  These two facts, even if true, cannot support a finding of a discriminatory policy or custom at JJC.  Specifically, despite Senu-Oke's own assertions, the plaintiffs have offered no proof that Senu-Oke is actually capable of making policy at JJC.  *See Killinger v. Johnson*, 389 F.3d 765, 771-71 (7th Cir. 2004).  In addition, although four other individuals filed complaints with the EEOC, the filing of a complaint alone does not prove that the defendants actually engaged in discriminatory conduct.  Given the lack of evidence on the record, the plaintiffs have failed to prove that JJC promulgated a policy or custom of discrimination in violation of § 1981.

With respect to the § 1981 claims against Senu-Oke in Counts IV and V, the plaintiffs need not prove the existence of a policy or custom of discrimination because Senu-Oke is not a public entity. To succeed on a § 1981 claim against Senu-Oke, the plaintiffs must only establish that 1) the plaintiffs are a member of a racial minority, 2) the defendant intended to discriminate on the basis of race, and 3) the discrimination concerned one or more of the activities enumerated in the statute. *Morris v. Office Max, Inc.*, 89 F.3d 411 (7th Cir. 1996). Given the facts established above, the plaintiffs have met their burden.

Accordingly, we grant defendants' motion for summary judgment on Counts IV and V as to the allegations against JJC, but we deny the defendants' motion for summary judgment on Counts IV and V as to the allegations against Senu-Oke.

**III.    Summary Judgment is Denied with Respect to All Remaining Counts.**

In order to succeed on a motion for summary judgment, the court must find that there are no genuine issues of material fact in dispute. *Celotex*, 477 U.S. at 322. In this case, summary judgment is inappropriate with respect to all remaining counts because several issues of material fact exist. In particular, the disputed facts include:

1.  whether plaintiffs' suffered an adverse and tangible employment action;
2.  whether similarly situated employees not in a protected class were treated more favorably by the defendants;
3.  whether the defendants' allegedly legitimate non-discriminatory reasons for an adverse employment action are pretextual;
4.  whether the plaintiffs' work environment was objectively and subjectively offensive;
5.  whether the plaintiffs' work environment was sufficiently severe or pervasive;
6.  whether the defendants unlawfully retaliated against the plaintiffs;

7. whether the defendants exercised reasonable care to prevent and correct the allegedly impermissible behavior; and

8. whether the plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities or to otherwise avoid harm.

Based on the above disputed facts, summary judgment is denied with respect Count II and III, as well as Counts I and IV, to the extent they do not allege national origin discrimination, and Counts IV and V, to the extent they do not allege claims against JJC.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is granted with respect to the national origin discrimination claims in Counts I and IV as well as the claims against JJC in Counts IV and V. The motion is denied with respect Counts II and III, the racial discrimination claims in Count I, the racial discrimination and hostile work environment claims against Senu-Oke in Count IV, and the retaliation claim against Senu-Oke in Count V.

It is so ordered.

_____
Wayne R. Andersen
United States District Court

Dated: March 13, 2009